Ms. Addie, you may proceed. Good morning, Your Honors. This is a case in which the CFC erred in its application of the Alice test. First, the court dissected the claims into their individual elements, ignored some elements, and concluded that the claims were directed Ms. Addie, in the blue brief at 6466, you argue that the Court of Federal Claims erred by only analyzing independent claims 1 and 22 and failing to separately consider the dependent claims. However, before the CFC, you barely discussed the dependent claims. It's in JA 785-867. And you don't object to Elbit's characterization of claim 22 as representative. That's at JA 818. Then you sent us that nice IPR in which the PTAB treated claims 1 and 22 as illustrative. Why shouldn't we treat 1 and 22 as representative? Let's cut right to the core. Thank you, Your Honor. First, there's no representative claim determination. The parties discussed the separate dependent claims that are at issue in the CFC proceeding at their briefs, in their briefs, in their 101 motions. There was no request that the court rule that claim 1 was representative. There was a statement made, as you said, at the oral hearing, but the parties certainly never agreed that it was representative and the court did not so rule. The fact that defendants did not separately address the dependent claims doesn't relieve them of their burden to prove that those claims were not patent eligible. Do you have a site for us in the appendix where you argued the claims separately? Yes, Your Honor. First of all, the defendant's brief on 101 is at A247 of the record. TBI's address the dependent claims is at A416, again at 441. In the reply brief, the defendants again go through the asserted dependent claims at 641 through 42 in their brief. TBI again addresses it in its supplemental brief on the affinity decision. Your Honor, let's take a look at claim 3, for example. And that's at A27, column 11, at the bottom. A23 includes the entire argument on 641, 642, as far as I can tell, is one paragraph. That's the reply brief? Yes. 441, check. Go to 441. Yeah. It's 441. I thought there was a reference in the reply brief to 641. I did. I did refer. Let me check. But you can check the opening brief, defendant's opening brief, at 247. Okay. 247. I'm looking at what Judge Moore referred to. Yeah, well, 441 is where your client argued the dependent claims, right? So isn't that what you want to direct Judge Wallach to, demonstrating that you preserved arguments related to the limitations? Absolutely. And that's at 441. But I also wanted to make sure that the court understood that defendants argued separately the dependent claims as well. In addition, count your honors, even if the dependent claims were not separately argued, which we do not agree, there's no ruling on, the independent claims satisfy 101 on their own. Because step one of the Alice test requires that you look at the individual limitations, and you look at them in combination. The court failed to consider them in combination. Secondly, the court had to look at inventive concept. And here, the inventive concept is tracking an object without reference to ground. That solves a specific technological problem that it was in the motion tracking art. And it solved challenges in the motion tracking art, because prior systems that tracked motion with respect to ground had latency problems, they had inaccurate results, and they simply didn't function properly. So no matter how you look at it, whether you look at claim one, which we are not asserting, but it survives the Alice test, or you focus on claim three. Some of your dependent claims identify different kinds of sensors. What specific inventive concept do they add? I think specifically, your honor, if you look at dependent claim three, and the further dependent claims depend from claim three, so they include these limitations as well. Dependent claim three adds from the set of angular inertial sensor that detects orientation relative to the moving reference frame. And it does so by using the relative angular rate signal. Again, that's at column 11 at the bottom of the page. The relative angular rate signal and the use of the ability to detect orientation without reference to ground. Without reference to ground is the inventive concept here, your honor. Do you think Deere is decided under step one or step two of the Alice test? I think Deere talks about both steps. Specifically, Deere says it is improper to dissect the claims into old and new elements and then ignore the presence of elements in the analysis. And that's what the Court of Federal Claims did specifically here, and that's step one. You have to look, take a look at what's claimed and consider them. It also addresses the inventive concept, step two of Alice. One way to think about your argument would be that it's similar to Judge Prost's recent rapid litigation decision, where she said under step one, you have to look at what the claims are directed to. Not just the fact that they may contain an abstract idea like a formula, but you have to really look at what the claim itself is directed to. That's absolutely right. And here the claims are directed to tracking an object without reference to ground, and they include these specific limitations. In addition, Judge Prost said in the rapid litigation management that you pass the inventive concept, step two, by showing that there's an improvement on existing technological processes. We have that here as well. But, Your Honors, that can't raise to the level of novelty. It's sufficient to make sure that the claims themselves do not cover such an unpatentable abstract idea. So, looking again at Alice, step two, the specification shows, it describes the invention, and it shows the advantages of the invention, and those are things that are appropriate to consider in the inventive, as part of the inventive concept. The court erred here because the Court of Federal Claims failed to consider the specification at all. It said that in A6 of the decision. But recent case law has confirmed that the specification is important for determining the technological advancement, for determining the problem solved in the prior art, and for putting context on the claims. Is that for claim interpretation, or should you be reading the specification into the claims when you're assessing eligibility? Of course you don't read the specification into the claims, but it provides context to the claims, and it also applies for claim interpretation, but there was no interpretation done here. It's a motion to dismiss on the pleadings, Your Honor, and so whatever considerations there may have been should be resolved in favor of the non-movement. One thing I wanted to address is the CFC's conclusion that equations are claimed or laws of nature are claimed. I'm not sure what equations or laws of nature the CFC is saying. They say navigation equations. However, there's no general navigation equation at issue here. Is there an equation in your dependent claims? I know there's not in the independent claims. Right. Isn't there some formula claimed in dependent claims? No, Your Honor. There's no formula claimed in the dependent claims. Well, I would say formula, equation. The dependent claims contain a process, and a process is something that shows the steps for doing something, whereas an equation is a relationship between the constants and variables, and it may aid in performing the process, but it's not the process itself. And the equations that are at issue in this case are equations 10, 11, and 12, which are at A25. But there are steps of formula in there. For example, claim 34 comprising double integrating a relative linear acceleration signal computed from the linear accelerometer signals measured by the first and second inertial sensors. There are steps, but it doesn't provide the equations as set forth in 10 through 12. However, even if it did, because of the specific structure described in the claims, and the technological advancement which the PTAB has held exists, the claims define over the prior art. And the claims, I'm sorry, the claims contain patent eligible subject matter. You know, the inventors did a simulation test to these equations at 10 through 12. The equations are a model. They're specific to the structure and the invention claimed. For example, the second, third, and fourth terms in these equations at column eight, they're new. They're not before presented. And you can see that at 19 through 21 of column eight. So in order to determine whether their specific model for tracking an object without reference to ground worked, they developed a simulation. And that simulation is discussed in the specification. It starts at column nine. The simulation was done because they were worried about errors, bias errors, and they didn't know how bad that would be. If the claims contained a law of nature, or if these equations were general navigation equations as the CFC held, there wouldn't have been a problem with error, because general laws of nature are applicable throughout. So it shows that these models developed by the inventors are not general. If you have rebuttal time, Ms. Eddy, do you intend to speak some? Thank you, Your Honor. I do, and I appreciate it. Mr. Zager? Actually, this is Kurt Calino on behalf of VELVET. I was going to start. Thank you. Good morning, Your Honors. I'm here from Coddington-Burlingham on behalf of VELVET. I would like to start with one of the points that came up in the presentation we just heard from Thales about representative claims. Judge Wallach, as you rightly pointed out, during the hearing before Judge Wheeler, two floors down a year and a half ago, I did indicate fairly specifically that we treated Claim 22, which is the independent method claim, as a representative claim. There was no disagreement from counsel about that. They even filed— About the fact that their briefs fairly clearly point out and argue separately various dependent claims. Their briefs do mention dependent claims. Our briefs do as well. And certainly, I'm prepared to talk about the dependent claims, but at least insofar as Judge Wheeler's concern and his judgment that the claims are invalid under Section 101, I think it's fair to say it's a fair characterization of the briefing before the Court of Federal Claims that the focused attention by both sides was on the independent claims. To the extent that they had tried to argue that additional elements add an inventive concept, for example, and they did little more than list what the independent claims were in the briefing. Obviously, Judge Wheeler was not persuaded by that because his order granted our motion in total, which related to both the independent claims and the dependent claims. But I'll certainly speak to the dependent claims here. I think, however— Do you think that I can fairly discern from his motion whether he treated the representative claims as governing the dependent claims, or do you think I can understand from his order that he separately considered but did not discuss the dependent claims? What is your approach? What is it you think he did? I think you can determine that he did both of those things. I think he certainly— Do you think it would be a really good idea for courts to invalidate entire patents and say, you know, by pointing out the faults in a representative claim and never ever discussing the dependent claims as individual property rights? Do you think that would be a good rule of law? That would not be a good rule of law, however— Is that what you're asking for? That is not what we're asking for. Did he separately discuss the dependent claims? He does not separately discuss the dependent claims in his order. As counsel pointed out, the dependent claims were referenced in briefing, and in the hearing, we argued about them. We argued about them. The defendants did. Tallis said nothing about the dependent claims during the entirety of the oral argument on the motion. Does failure to argue something that you argued in your brief in an oral hearing waive all those arguments that were otherwise made in your brief? Is that the rule of law that you're articulating now? No, no. No. Okay. So then why, if they preserved these arguments as to separate dependent claims on page 441 and 442 of their brief, where they didn't just list the dependent claims, but rather pointed to the specific elements and grouped them as to which claim has them, and then explained that these physical limitations further define the censors of claims 1 and 22, and they went into detail, why in the world are those properly—why should I treat those as having properly been resolved by virtue of his resolution of claims 1 and 22? Understood. And even if the court were to determine that Judge Wheeler's decision did not extend to them, and we believe it did because it did grant the motion, and as Your Honor points out, there were references to the dependent claims in the briefs that were submitted to the court. It granted the motion, but don't district courts, even the Court of Federal Claims—or it's not a district court, but the same rules apply to them—aren't they required to give us a decision that is capable of being reviewed on appeal? Yes, they are. I agree with that. However, I would say that—and there's an invitation in the reply brief from Tallis—that this court at most should affirm the decision on the independent claims and the remand as to the dependent claims. Section 101, patent eligibility, is an issue of law for the court. That would strike me as a fairly inefficient way to approach dealing with the claims here. Certainly this court, which has now had a full round of briefing on the 101 issues and can take up these issues as it does de novo, is in a position to make those determinations as well. And I think there are a couple of points that are critical here for purposes of the court's evaluation of the independent claims and the dependent claims. First of all, focusing on the role of the censors, which I think everyone would agree is indispensable here. Censors are generic, they're conventional, they're used for their well-understood purpose. Tallis actually conceded this in the Court of Federal Claims Proceedings. We pointed this out in our briefing that at the oral argument—and this is in the appendix 864 through 865—we had made the argument that the censors were generic, conventional, used for their well-understood purpose. And counsel went back at the very end of the hearing and had the last word and referred to our arguments about the censors being conventional as a red herring and went on to concede that the inertial censors are conventional, and our patent says that. We never said anything else. So what you're just saying is that inertial censors generally are known? They're generally known and they are used— Not using them in combination. I mean, that's—I understand. I just want to make sure I understand your argument. You're just saying inertial censors are known? The inertial censors are known, and even in the context of this invention, they are used for their well-understood purpose, which is to generate information about the forces on the objects to which they are affixed. That is what inertial censors do, whether it's orientation, whether it's acceleration with linear accelerometers, and there's a laundry list of the different kinds of inertial censors that can be used for its purpose. So Tallis has conceded that the censors themselves in this invention as claimed are being used for their conventional purpose. In addition— But what's the abstract idea? I mean, every single circuit that is designed, you know, the capacitor is a conventional object, the resistor is a conventional object, you know, these—the diode is a conventional object, but they're put together in a new combination to effectuate a new result. I don't think that would fall under even the Supreme Court's version of Tallis. So where is the abstract idea? Because absent the abstract idea and the claim being directed to an abstract idea, the fact that you can point out that various elements of the claim happen to be conventional when they're put together in a novel, non-obvious combination doesn't suddenly make everything ineligible. Right. I don't disagree with that. The ineligible subject matter here are the navigation equations, which we contend are a law of nature. They are a mathematical expression of the relationship between two moving objects. And the claims are directed to that because if you look at the claims, the inertial censors that are used to generate data for the inputs for those equations, they are also arranged in the same way that they were arranged in the prior art. Counsel talked about how this invention is fundamentally directed to an alleged improvement where you can track the motion of two moving objects without having to do it relative to the ground. Let me talk about your sensor point again for a second. Now in Deere, the sensor there was a thermocouple, and it was used in its ordinary use. It was in the prior art for measuring temperature. So how is your point any different than Deere? Well, it was a new thermocoupler, and it was used in a different way in the sense that it was included within the novel. Well, is the sensor here used in a different way in that what it's determining, the way it's arranged is determining? It is not. It is not used in a different way, and it is not arranged in a different way. And in fact, in Tallis' brief, in the principal brief on page 13, they describe the prior art systems, the tracking systems that involve relative tracking but having to go through the ground where you tracked an object relative to the ground and then a moving platform relative to the ground and related the two. That is the problem that they purport to overcome with this invention and allow you to track two moving objects relative to each other. And what they say about this, and this is in page 13 of the principal brief, is that prior to Foxland's invention claimed in the 159 patent, those of skill in the art believe that when tracking an object such as a person's head relative to a moving platform such as an aircraft, a locally level ground-based navigation frame, N-frame, should be used such that the moving platform, P, and the user's head, H, can be tracked relative to the ground, N. In this way, the user's head pose, which is shorthand for position and calculated relative to the moving platform by transforming the estimates from one frame to another. And they cite the portion in column 6 of the specification that talks about this prior art approach. In simpler terms, the pose of the vehicle will be tracked with respect to the ground, the pose of the user's head would be tracked with respect to the ground, and the pose difference could then be computed. That is their description of the prior art system where you have to do relative tracking through the ground. But in this instance, the inertial trackers are on the tracked object and the moving platform, which tells us that the only difference between this system, that you're tracking it relative to the ground, but you still have inertial trackers. But it's different than, I don't understand your point, because you're saying the sensors are being used in a conventional way, but here you're telling me it's different in that it's not, in the claimed invention, you can determine the reference moving object relative to another moving object as opposed to determining moving objects relative to the ground. The uses of the sensors, both in that prior art context, where it's referencing, you know, determining relative to the ground, and in the invention. Wait, this feels like a 102 analysis for 101. That seems really weird. But the inertial sensors themselves are in both circumstances on both the tracked object and the moving platform. Why don't you talk more, I understand what you're saying, but I think your better bet is to explain why it is that this claim is directed to an ineligible subject matter, like a mathematical formula, or why the combination as a whole doesn't have a technological advancement. Because both the sensors used for that conventional purpose and the location of the sensors is the same in the prior art system as it is in their alleged invention. And the only difference, the only difference is they have a new equation such that the inputs from those sensors are run through a new equation to allow you to bypass having to calculate relative to the ground. Where is the equation in claim one? The equation is not specifically recited in claim one. It is not specifically recited in any of the claims, although this court has held previously that the failure to specifically recite an algorithm in a claim is not significant. The claims can still be directed to laws of nature and algorithms. It is... What cases are you thinking of with that? I believe that actually Alice's case said that. In fact, I think the petitioner, I think there was a comment to the effect that the court didn't accord great significance to that, much less the talismanic significance that was placed on it by the patent holder. The point here is that the only difference that allows for this relative motion tracking without going to the ground is the new equation. And what that fundamentally tells us is that the claims are directed to those navigation equations. And Mr. Talia, you're well over your time, so I think I should hear from, since there are two different folks at your table, I should make sure he gets his four minutes. Thank you. Is it Mr. Zager? How do I say your name? Zager, Your Honor. Zager. Thank you. Your Honor, the government concurs with Elbit that the decision of the trial court in this manner should be affirmed because the navigation equations at the heart of this case are directed to unpatentable laws of nature. With regard to Alice step one... Because I assume you agree that Alice did not overrule Deere. Yes, Your Honor. So how is this case different from Deere? In one respect, Your Honor, Deere had a specific outcome that was tied to a product. This case and these claims do nothing more than solve an equation. Inputs go in, numbers go in from conventional sensors, and out comes another number. In that sense... Okay, so Mr. Kalia tried to claim that one thing that was different about Deere is that somehow some of the physical elements in Deere were different than novel. But I have Deere in front of me, and I'm reviewing the majority opinion, and they make no reference to novel specific elements in their discussion of why it's patent eligible. In fact, in Deere, the only reason they say it's patent eligible, we view respondents' claims as nothing more than a process for molding rubber products, and not as an attempt to patent a mathematical formula. And it goes on to say, we recognize, of course, that this process involves a mathematical formula. So why isn't this an attempt to patent a means of tracking? You say means of tracking in general, a means of tracking without reference to ground, either way, kind of doesn't matter to me. But a means of tracking that happens to utilize a formula as part of the tracking process. Why isn't that exactly like Deere? Because these claims involve nothing more than solving mathematical equations. No, no, they involve using sensors to gather data, and putting it into a mathematical equation, and then outputting it, right? Because there is data gathering from the sensors, and that's, I mean, this isn't just solving a mathematical equation. There's a useful result that comes from it. You're able to track an object. Just like in Deere, there was a useful result that came from utilizing that equation. You cured rubber better than the prior processes were able to do so. So why, I don't know, this is where I'm struggling. I mean, Alice is such an amorphous thing, that, I mean, it's almost, you know, it's like shooting ducks with a blindfold on. You know, you can't sort of figure out where they are. But Deere just seems so concrete, you know, and this case seems to track so clearly on it. That, to me, is your obstacle. You don't even have to mention Alice again, because Deere is clearly still good law, and the cases are so on point. That's your obstacle to overcome for me. The difference in these claims, Your Honor, when we look at these claims, is that there is not a product at the end. These claims are very broadly construed, and the final product is a pose, a number, a mathematical expression. These claims do not then feed that mathematical information into a tracking system. These claims are extremely broadly crafted, and there are consequences to drafting claims this broadly. Am I correct that the sensors that are involved are all on the aircraft, and nothing is fed through a ground station in either circumstance? By either circumstance, do you mean the prior? Or in this? It's simply that there's a sensor on the aircraft in that prior that tracks the position relative to the ground. That's correct, Your Honor, and I believe the computing element is on the aircraft in the prior arc as well. Is there anything further you'd like to add? I know your time is very brief. I would just add, Your Honor, that these claims, so broad, the only elements we have are conventional sensors that gather data. They do not do anything that they did not do before, and the computing element, as opposed to NFISH and all of those other cases, is described as nothing more than an element that in the case of Claim 3, an integration. In the case of Claim 13, a double integration. It's difficult to even call those algorithms. They are so general. And with that, Your Honor, if there are no further questions, thank you very much. Okay, thank you, Mr. Zaker. Ms. Addy, why don't you add a minute to her rebuttal time, because we let the other folks go over a little bit. Thank you, Your Honors. First of all, the Court of Federal Claims didn't consider this a representative claim case. If you look at the decision at A4, the Court of Federal Claims said, and this is on the very first line on page A4, Claims 2 through 21 all depend directly or three limitations. This shows that the Court of Federal Claims erred in not specifically considering the additional limitations in the dependent claims, but regardless, you can look at the independent claims and what Appellee's counsel is trying to get us to do here is a novelty analysis. But that's not what's required for inventive concept. Inventive concept is something that's sufficient to determine that we're not using an abstract idea. But Appellee's counsel admit that all these limitations are present. We're not looking to see whether they're novel. We're not looking to see whether they're generic. We're looking to see whether there's structure that's present. And it's more than just the censors. It's the censors that determine an orientation. They determine something that the aircraft can use, and they solve the problem of not having to use the ground as a reference. That is new. So even if we had to raise the level of novelty, we would survive it, just as the PTAB held we did. Your Honors, in conclusion, the asserted claims are limited in scope to an ordered combination of patent-eligible elements. They solve the known problems in the art by tracking an object without reference to ground. This case should be reversed. Thank you, Ms. Addy. I thank all three counsel. The case is taken under submission.